IN THE UNITED STATES DISTRICT COURT
FOR THE DIVISION OF SOUTH CAROLINA
ANDERSON DIVISION
C.A. No.: 8:12cv2365-TMC

| | |
|---|---|
| Starr-Iva Water and Sewer District,   )<br>  )<br>  Plaintiff,   )<br>  )<br>  v.   )<br>  )<br>City of Anderson, a Municipality,   )<br>  )<br>  Defendant,   )<br>_____ ) | DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTIONS FOR SUMMARY JUDGMENT |

Based primarily on the recent decision of the S.C. Court of Appeals in *West Anderson Water District v. City of Anderson*, CA No. 2012-CP-04,2770, Op. No. 5413 (June 15, 2016), the Defendant City of Anderson (the "City") hereby renews its original Motion for Summary Judgment (ECF 50) and its Motion for Summary Judgment Based on Collateral Estoppel (ECF 89). The City respectfully presents this Memorandum in additional support of the motions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff, Starr-Iva Water and Sewer District ("Starr-Iva"), the City, and West Anderson Water District ("West Anderson") are members of the Anderson Regional Joint Water System (the "ARJWS"), which is a joint water system comprised of 14 municipalities and special purpose districts. On March 21, 2002, the City, Starr-Iva, and West Anderson, as well as other members of the ARJWS, entered into a Water Sale and Purchase Agreement (the "Agreement") under which each member agreed to purchase water from the ARJWS to provide potable water service to customers located within the member's defined service area.

1

Because the members foresaw the potential for future disagreements about their service territories, they negotiated among themselves certain provisions (the "Service Rights Provisions"). Section 6.02 of the Agreement, entitled "Territorial Boundaries," provides that "[i]n order to successfully plan and finance additions to each Purchaser's System, and to avoid future disputes…," the parties "agreed upon a Territorial Map of the territories of the parties to this Agreement in order to set out the areas each intends to serve." Specifically, the Territorial Map shows that the City would service the sites occupied by BASF, Owens-Corning, and Michelin. (A color copy of the Territorial Map, with the BASF, Owens-Corning, and Michelin properties labeled, is attached hereto as Exhibit 1.)

In addition, the following language appears in the "Background and Findings" section of the Agreement:

> It is presently intended by the parties hereto that the City of Anderson will serve (1) two industries, BASF and Owens-Corning, located within the boundaries of Starr-Iva Water and Sewer District; and (2) the industrial facilities of Michelin, which are located within the boundaries of West Anderson Water District. Both Starr-Iva Water District and West Anderson Water District consent to the City of Anderson's providing such service to these industries. However, such consent is strictly limited to the provision of service to these named industrial customers and no further provision of service by the City of Anderson shall be made to any customer located within the boundaries of Starr-Iva Water and Sewer District or within the West Anderson Water District without the written consent of such Purchaser.

On August 17, 2012, West Anderson Water District filed suit in State Court, asking the Court to declare that the City is not entitled to serve a new Michelin facility located on the Michelin site. On the same date, Starr-Iva filed the suit herein, similarly asking the Court to declare that the City is not entitled to serve the facilities located on the BASF and Owens-Corning sites. The City counterclaimed for declaratory judgment in both cases, asking the Courts to declare that the City was entitled to serve the disputed sites during the term of

the Agreement. One of the primary disputes in both lawsuits is the interpretation of the 2002 Agreement, specifically whether the City's right to provide potable water service extended to future industries located at the disputed sites.

The Honorable R. Keith Kelly tried the *West Anderson* case in Anderson County on August 12-13, 2014. On September 22, 2014, Judge Kelly filed an Order Including Findings of Fact and Conclusions of Law, which is attached hereto as Exhibit 2. In that Order, Judge Kelly made findings and conclusions related to many of the exact issues that are in dispute in this case.  West Anderson appealed that case to the S.C. Court of Appeals, and the City filed its Motion for Summary Judgment based on Collateral Estoppel (ECF 89), as well as a Motion for Continuance or Stay (ECF 90) based thereon, in this federal action. This Court did not rule on the collateral estoppel motion, but granted the City's Motion to Continue or Stay by Text Order (ECF 96).

After hearing oral arguments in the *West Anderson* case, the S.C. Court of Appeals issued an Opinion on June 15, 2016, wherein it affirmed the trial court. (A copy of Opinion No. 5413 is attached hereto as Exhibit 3). West Anderson did not appeal further, and the Remittitur, attached hereto as Exhibit 4, is dated July 1, 2016. By Text Order filed on July 11, 2016 (ECF 116), this Court directed the parties to file a joint status report along with appropriate motions by July 25, 2016.

As argued below, the City would submit that the Court of Appeals' decision in the *West Anderson* case is further support for the City's original Motion for Summary Judgment (ECF 50), which is hereby renewed, and now entitles the Defendant to summary judgment

and also provides further support for the City's Motion for Summary Judgment based on Collateral Estoppel (ECF 89).[1]

## LEGAL ARGUMENT

### I. THE *WEST ANDERSON* CASE ENTITLES THE CITY TO SUMMARY JUDGMENT ON ITS ORIGINAL MOTION FOR SUMMARY JUDGMENT

The City prays reference to its Memorandum in Support of its original Motion for Summary Judgment (ECF 50). In addition to the reasoning and authorities cited therein, the City would show that the *West Anderson* case now compels this Court to grant that Motion. The arguments that Starr-Iva presented in opposition to the City's original Motion have now been determined adverse to Starr-Iva by the Court of Appeals Decision which now constitutes binding authority in South Carolina on these issues.

### II. COLLATERAL ESTOPPEL ENTITLES THE CITY TO SUMMARY JUDGMENT AS TO THE CONTRACTUAL CLAIMS.

"Res judicata bars relitigation of the same cause of action while collateral estoppel bars relitigation of the same facts or issues necessarily determined in the former proceeding." *South Carolina Public Interest Foundation v. Greenville County,* 401 S.C. 377, 737 S.E.2d 502 (Ct.App.2013) (citing *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997)). "Under the doctrine of issue preclusion, if an issue of fact or law was actually litigated and determined … the determination is conclusive in a subsequent action on that claim or a different claim." *Laughon v. O'Braitis*, 360 S.C. 520, 602 S.E.2d 108 (Ct.App.2006) (citing *Carman v. S.C. Alcoholic and Beverage Control Comm'n*, 317 S.C. 1, 451 S.E.2d 383 (1994)).

---

[1] In addition to the legal arguments contained herein, the City would refer the Court to is previous memoranda in support of its motions for summary judgment, including the following entry numbers: 50-1, 52, 57, 70, 89-1, and 100, which are incorporated herein.

"[S]tate court judgments are given preclusive effect in subsequent section 1983 actions brought in federal court." *O'Reilly v. County Bd. of Appeals for Montgomery County, Md.*, 900 F.2d 789 (4th Cir.1990). A federal court must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.* (citing *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75 (1984)). Thus, South Carolina law is controlling on the issue of whether Starr-Iva is precluded from asserting the relevant issues. *See id.*

"Under the doctrine of collateral estoppel, once a final judgment on the merits has been issued in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit are precluded as to the parties **and their privies** in any subsequent action." *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 450 S.E.2d 616 (Ct.App.1994) (emphasis added) (citing *Richburg v. Baughman*, 290 S.C. 431, 351 S.E.2d 164 (1986)). A nonparty can be precluded from relitigating an issue if he is "in privity with a party to the prior action against whom an adverse finding is made." *Id.* "The term 'privy,' when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding." *Id.* (citing *H.G. Hall Constr. Co., Inc. v. J.E.P. Enterprises*, 283 S.C. 196, 321 S.E.2d 267 (Ct.App.1984)).

"There is no single fixed definition of privity for purposes of [collateral estoppel]. Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of [collateral estoppel] is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." *Weinberger v. Tucker*, 510 F.3d 486 (4th Cir.2007) (citing *State*

5

*Water Control Bd. v. Smithfield Foods, Inc.,* 261 Va. 209, 542 S.E.2d 766 (2001)). " 'Privity' as used in the context of collateral estoppel, does not embrace relationships between persons or entities, but, rather deals with a person's relationship to the subject matter of the litigation." *Roberts v. Recovery Bureau, Inc., supra* (citing *Richburg, supra.*)

"While the traditional use of collateral estoppel required mutuality of parties to bar relitigation, modern courts recognize the mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issue." *Carolina Renewal, Inc. v. S.C.D.O.T.*, 385 S.C. 550 684 S.E.2d 779 (Ct.App.2009) (citing *Snavely v. AMISBU of S.C., Inc.* 379 S.C. 386, 665 S.E.2d 228 (Ct.App.2008)). "[T]he primary concern of our courts in applying collateral estoppel is not whether the parties satisfy the mutuality requirement, but whether a potentially precluded party had a full and fair opportunity to litigate the issues in a prior action." *Snavely v. AMISBU of S.C., Inc., supra* (citing *Beall v. Doe*, 281 S.C. 363, 315 S.E.2d 186 (Ct.App.1984)).

One factor to be considered in regard to whether there was a "full and fair opportunity to litigate the issues" is whether "[t]he person seeking ... to avoid unfavorable preclusion ... could have [a]ffected joinder in the first action between himself and his present adversary." *Beall v. Doe* (citing Restatement (Second) of Judgments §29 (1982)). Here, the Plaintiff Starr-Iva was perfectly aware of the litigation in State court and that the issues in the case centered around the Court's interpretation of the exact same contract (the Agreement) at issue in this case. The two lawsuits were filed on the exact same day and Starr-Iva's lawyers attended part of the West Anderson trial. Thus, it was clear that the verdict therein could, and most likely would, affect Starr-Iva. It is also likely that Starr-Iva would have attempted to argue collateral

estoppel had the State Court agreed with West Anderson (and thus Starr-Iva's) interpretation of the Agreement. Starr-Iva could and should have joined in the State court action, yet chose not to do so and can, therefore, not claim now that it did not have a full and fair opportunity to do so.

Once privity is established, "the party seeking issue preclusion … must show that the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment." *Beall v. Doe*, *supra.* (internal citations omitted). The *West Anderson* decision resolved numerous issues essential to the present case. The primary issue in both cases is the interpretation of the 2002 Agreement to which Starr-Iva, West Anderson, and the City were all parties. The same provisions are at issue in both cases and pertain specifically to all three of these entities. Judge Kelly's Order and the Court of Appeals' Opinion make specific findings of fact and rulings of law pertaining to the transactions and negotiations that led up to the execution of the Agreement and interpreting the provisions of the Agreement, and these are the same in both actions. These findings and conclusions are binding on the Court herein under the doctrine of collateral estoppel.

In addition to Judge Kelly's findings of fact and conclusions of law, which are addressed in the City's previous memoranda (ECF 89-1 and 100), the following findings by the Court of Appeals are applicable to and binding herein and entitle the City to collateral estoppel and summary judgment:

- The evidence supports the circuit court's conclusion that the parties intended to authorize the City to provide water service to the entire Michelin [and thus BASF and Owens-Corning] site.

- The circuit court correctly reasoned that if a joint water system is authorized by section 6-25-128 to enter into a contract for a term extending beyond its board members' own terms, the members of the joint water system, such as the District, must be able to do the same.

- The delegation of power given to the City to serve the Michelin [and BASF and Owens-Corning] site did not substantially compromise the District's central, primary function.

West Anderson and Starr-Iva stand in the exact same position as one another with regard to the terms of the Agreement and the applicability of the Territorial Map. They were participants in the same negotiation process and were included in the same contractual provisions. The State Court's findings with regard to the "Michelin site" necessarily apply equally to the BASF and Owens-Corning sites involved in the dispute herein. Starr-Iva attempted to make the same legal arguments that were rejected by Judge Kelly and the Court of Appeals in the State court action. Those issues have been "actually litigated and determined," and the State court's rulings as to these arguments are conclusive herein.

"Res judicata's fundamental purpose is to ensure that no one should be twice sued for the same cause of action. The doctrine [of res judicata] flows from the principle that *public interest* requires an end to litigation and no one should be sued twice for the same cause of action." *South Carolina Public Interest Foundation v. Greenville County*, 401 S.C. 377, 737 S.E.2d 502 (Ct.App.2013). S*ee also S.C. Dep't of Soc. Servs. v. Basnight,* 346 S.C. 241, 551 S.E.2d 274 (Ct.App.2001) ("The doctrine of res adjudicata (or res judicata) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action.") (quoting *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.,* 207 S.C. 15, 24, 35 S.E.2d 47, 56 (1945)).

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party **or his privy** and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1970) (emphasis added) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313 (1971). "The principle of res judicata fosters reliance on judicial action, and tends to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results." *Thomas v. Consolidation Coal Co. (Pocahontas Fuel Co. Div.)*, 380 F.2d 69 (4th Cir. 1967) (citing Developments in the Law— Res Judicata, 65 Harv.L.Rev. 818 (1952)).

Here, to allow Starr-Iva to seek an interpretation of the Agreement which is contrary to the City's right to serve the disputed sites and contrary to the State Court's findings and conclusions, would subject the City to relitigation of the exact same issues determined in the State Court action and would not promote judicial economy. Such a result is exactly the type of duplicative and costly litigation that the doctrines of res judicata and issue preclusion are designed to prevent. The City is the Defendant in both lawsuits. Starr-Iva and West Anderson negotiated with the City to create and execute the relevant provisions of the Agreement. If collateral estoppel does not apply here, then this Court could interpret the provisions differently and/or apply the law differently, which would lead to the absurd result of Starr-Iva and West Anderson being treated differently under the exact same contractual provisions. Collateral estoppel clearly applies in this case and entitles the City to summary judgment as to the Plaintiff's contractual claims.

### III. THE COURT OF APPEALS' DECISION SUPPORTS THE CITY'S INTERPRETATION OF THE APPLICABLE LAW.

In its previous memoranda, Starr-Iva relied heavily on the cases of *City of Beaufort v. Beaufort-Jasper Cty. Water & Sewer Auth.*, 325 S.C. 174, 480 S.E.2d 728 (1997) and *Cunningham v. Anderson County*, 402 S.C. 434, 741 S.E.2d 545 (Ct.App.2013). Starr-Iva argued that, under these cases, the Agreement impermissibly bound its successor boards and substantially compromised its central primary function. However, the Court of Appeals' decision in *West Anderson* makes it clear that Starr-Iva's interpretation of those cases and attempted application hereto are erroneous.

Just as West Anderson argued, Starr-Iva has argued that the *Cunningham* and *Beaufort* decisions voided the Agreement "as impermissibly binding Starr-Iva's boards." (See, for example, ECF 67, p. 20.) However, the Court of Appeals in *West Anderson* found that the enabling legislation for the Districts,[2] considered with the Joint Municipal Water Systems Act's[3] authorization of contracts not exceeding fifty years, "clearly authorizes the local governing body to make a contract extending beyond its members' own terms" and thus qualified as an exception to the rule that contracts involving a governmental function may not bind successor boards.

Similarly, the Court of Appeals decision in *West Anderson* clearly rejects the Plaintiff's argument herein, based on the *Beaufort* case, that the Agreement is void for substantially compromising the Plaintiff's central, primary function. (See, for example, ECF 67, p. 22.) The Court of Appeals in *West Anderson* rejected this argument, distinguished the facts herein from those of the *Beaufort* case, and found that the delegation of power given

---

[2] S.C. Code Ann. §§33-36-1310 to -1370.
[3] S.C. Code Ann. §§6-25-5 to -170.

10

to the City to serve the Michelin site (and thus the BASF and Owens-Corning sites) did NOT substantially compromise the District's discretion or ability to function.

The Court of Appeals' application of the *Cunningham* and *Beaufort* cases to the *West Anderson* case necessarily applies equally herein, as the same contractual provisions are involved in both cases. Such application clearly rejects the argument of Starr-Iva with regard to those cases and further supports the City's motion for summary judgment.

### IV.     **THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO THE PLAINTIFF'S FEDERAL CLAIMS.**

The *West Anderson* case did not include a cause of action, such as that found herein, for violation of 7 U.S.C. §1926(b) of the Consolidated Farm and Rural Development Act. Nonetheless, the Court of Appeals finding therein does support the City's argument with regard to Starr-Iva's federal claims in this case.

To qualify for protection under §1926(b), Starr-Iva must establish that (1) it is an "association" within the meaning of the Act, (2) it has a qualifying federal loan outstanding, and (3) it has provided water service or made it available to the disputed area. *Chesapeake Ranch Water Company v. Board of Com'rs of Calvert County,* 401 F.3d 274 (4th Cir. 2005) (citing *Le-Ax Water Dist. V. City of Athens, Ohio*, 346 F.3d 701 (6th Cir. 2003)). To prove that it has provided or made water service available to the particular area, Starr-Iva must demonstrate that (1) it is physically capable of serving the area in dispute, (2) it has the legal right under state law to do so, and (3) the disputed area is within the geographical boundaries of Starr-Iva's existing franchise area. *Id.* However, as addressed fully in Argument II of the City's original Memorandum in Support of Motion to Dismiss and/or for Summary Judgment (ECF 50-1), which is incorporated herein by reference, Starr-Iva cannot prove that the disputed sites are within its service area (territorial boundary) or

11

that it has the legal right under state law to serve the disputed area. Based thereon, the City is entitled to summary judgment on Starr-Iva's federal claims.

First, it is clear that the BASF and Owens-Corning sites are not in the service area (territorial boundary) of the Plaintiff's water district, based on the 2002 Agreement wherein Starr-Iva gave the City the right to serve those areas. This argument is supported by the Court of Appeals' Opinion in *West Anderson*, which upheld the validity of the 2002 Agreement and the City's right to serve the disputed sites. Second, Starr-Iva clearly does not have the legal right to serve the disputed sites, a finding also supported by the *West Anderson* decision. Starr-Iva and West Anderson contractually gave the City the right to service the areas in the 2002 Agreement, and their power to do so was upheld by the Court of Appeals. In addition, the Court of Appeals clearly rejected Starr-Iva's argument, based on the *Beaufort* case (discussed hereinabove), that it could not have contractually given the City the right to serve the disputed areas.

Because Starr-Iva cannot meet the elements required for §1926(b) protection, the City is entitled to summary judgment as to the federal claims, all brought under 7 U.S.C. §1926(b) of the Consolidated Farm and Rural Development Act.

## **CONCLUSION**

For all the foregoing reasons, the City respectfully submits that this Court should grant its Motions for Summary Judgment as to all of the Plaintiff's causes of action based on the absence of a genuine issue of material fact and/or based on collateral estoppel.

Respectfully submitted,

LOGAN, JOLLY & SMITH, LLP

s/James W. Logan, Jr.
James W. Logan, Jr. (Fed ID #:  2712)
James D. Jolly, Jr. (Fed ID #:  1410)
P.O. Box 259
Anderson, SC  29622
1805 North Boulevard
Anderson, SC  29621
logan@loganjollysmith.com
jolly@loganjollysmith.com
(864) 226-1910
(864) 226-1931 (fax)


Frank H. Gibbes, III (Fed ID #:  2084)
Gibbes Burton, LLC
308 East St. John Street
Spartanburg, SC  29302
fgibbes@gibbesburton.com
(864) 327-5000
(864) 327-5001 (fax)

ATTORNEYS FOR THE DEFENDANT

13